Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | P. Michael Mahoney |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50013 | **DATE** | 7/23/2003 |
| **CASE TITLE** | Garrison vs. McHenry County, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)    ☐ General Rule 21    ☐ FRCP41(a)(1)    ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, Garrison's Motion to Compel and Modification of Agreed Protective Order is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 24 2003 | 59 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 JUL 23 PM 4:06 | 7/23/2003 date mailed notice | |
| sp | courtroom deputy's initials | Date/time received in central Clerk's Office | sp mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

D. STEVEN GARRISON,           )
                              )
        Plaintiff,             )
                              )
        v.                    )        Case No. 00 C 50013
                              )
KEITH NYGREN, individually and in      )        Philip G. Reinhard
his official capacity of SHERIFF OF    )        P. Michael Mahoney
MCHENRY COUNTY, ILLINOIS,              )
WILLIAM MAIRE, individually and in his )
official capacity, REBECCA SYLVESTER,  )
individually and in her official capacity, and )
DONNA PATNAUDE, individually           )
and in her official capacity.          )
                              )
        Defendants.            )

## Memorandum Opinion and Order

Plaintiff D. Steven Garrison ("Garrison") sued Defendants Keith Nygren ("Nygren"), Sheriff of McHenry County, William Maire ("Maire"), Chief of Corrections of the McHenry County Sheriff's Department, and Donna Patnaude ("Patnaude"), Sergeant of Corrections with the McHenry County Sheriff's Department. On June 20, 2003, Garrison filed a Motion to Compel, under seal,[1] requesting an order compelling Nygren and Patnaude to provide and comply with outstanding discovery, and a Motion for Modification of Agreed Protective Order. Nygren and Patnaude responded separately to Garrison's motions. For the following reasons, Garrison's Motion to Compel and Modification of Agreed Protective Order is denied.

---

[1] While Garrison's Motion to Compel and Motion for Modification of Agreed Protective Order was filed under seal, Nygren and Patnaude's response was not filed under seal and neither was Garrison's reply.

## Background

Garrison was employed by the Sheriff of McHenry Count from January 2, 1992 until August 20, 1998 and during that time held the position of Sergeant of Corrections. (Am. Compl. at ¶3). In May 1998, the Illinois State Police conducted a criminal investigation concerning allegations that Garrison and two other officers engaged in a scheme to falsify official records of the McHenry County Sheriff's Department relating to sick time benefits for another officer. (Am. Compl. at ¶17). Garrison alleges that during the criminal investigation, Maire and Patnaude made false statements to investigators relating to the alleged scheme.

On August 20, 1998, Nygren terminated Garrison's employment because of Garrison's alleged involvement in an alleged scheme to falsify official records regarding another officers use of sick time. (Am. Compl. at ¶23). A grand jury was convened to consider criminal charges against Garrison and the other officers involved in the alleged scheme and on August 20, 1998 a grand jury returned a bill of indictment against Garrison and two other officers. (Am. Compl. at ¶25). In April 1999, a McHenry County judge granted motions for directed verdict finding in favor of Garrison and the other two officers. (Am. Compl. at ¶31). Garrison filed his Complaint on January 11, 2000 and amended his Complaint on August 8, 2001. Garrison's three count Amended Complaint alleges a violation of Title VII of the Civil Rights Act of 1964 (Count I), malicious prosecution (Count II), and defamation *per se* (Count III).

*I. Garrison's Motion to Compel and Motion for Modification of Agreed Protective Order*

Garrison's Motion to Compel and Modification of Agreed Protective Order alleges that during the deposition of Sylvester, an issue arose regarding a pending investigation pertaining to the alleged misconduct of Patnaude. Apparently in November 2002, the Illinois State Police conducted

2

an investigation of Patnaude regarding her alleged involvement in inflating a request for overtime.

On December 10, 2002, during Patnaude's deposition, Garrison's counsel asked Patnaude to produce any reports or any other documents pertaining to the investigation against Patnaude. On December 16, 2002, Patnaude's counsel informed Garrison's counsel that he was waiting to receive the report of the investigation from the Illinois State Police. Garrison's counsel continued to inquire about the investigative reports in January and February 2003 and on March 18, 2003, during a rescheduled deposition of Patnaude, Patnaude's counsel informed Garrison's counsel that the investigation was complete but that he had not seen the report. Additionally, during Patnaude's March 18, 2003 deposition, Patnaude answered questions relating to the criminal investigation against her but asserted her Fifth Amendment privilege on questions regarding the substance of the allegations against her.

During the week of June 6, 2003, Patnaude's counsel informed Garrison's counsel that he was willing to produce most of the records of both the Illinois State Police investigation and the McHenry County Sheriff's internal investigation subject to two limitations. First, because the internal investigation was not officially closed, Patnaude's counsel sought a protective order limiting disclosure to counsel of record, staff and this Court. The parties agreed. Second, Patnaude's counsel informed Garrison's counsel that he intended to withhold certain documents from the investigation file consisting of statements that Patnaude had voluntarily given during the investigation. Patnaude was asserting her Fifth Amendment right against self-incrimination as to the statements.

Garrison now argues that Patnaude should be compelled to respond fully to Garrison's request for discovery pertaining to the investigations of Patnaude's conduct, including those statements that have been withheld under the Fifth Amendment. Garrison argues that what he seeks

is relevant and admissible evidence because the allegations against Patnaude are very similar to the allegations that led to Garrison's termination. That being, Garrison argues, Patnaude allegedly falsified a request for 16 hours of overtime and Garrison allegedly falsified another employee's sick time records. While the department rules and regulation for the Sheriff of McHenry County govern both Patnaude and Garrison's violation, Patnaude has not been terminated while Garrison was terminated.

*II. Defendants' Nygren, Maire, Sylvester Response*

Defendants' Nygren, Maire, and Sylvester argue that Garrison cannot use the Patnaude investigation evidence to show that the action Nygren took against Garrison in 1998 was discriminatory because: 1) Nygren has not taken any action as a result of the Patnaude investigation; 2) the alleged violation by Patnaude is not similar to that of Garrison; and 3) Garrison cannot bootstrap his case by saying that the Sheriff discriminated against him in 1998 because of action that Nygren did or did not take five years later.

As to the first argument, Nygren, Maire and Sylvester argue that a decision has not yet been made on what action, if any, will be taken on Patnaude. Any guess, Nygren, Maire, and Sylvester argue, would be purely speculative and the fact that there was an investigation into Patnaude does not lead to relevant or admissible evidence.

Turning to the second argument, Nygren, Maire and Sylvester argue that the acts Garrison were accused of are very different then the acts Patnaude is accused of currently. For one, while Patnaude is accused of inflating a request for overtime, Garrison was accused of conspiring with other officers in using sick time improperly. The State's Attorney in Garrison's case found that there was evidence of a crime and convened a grand jury, whereas, in Patnaude's case, the State's Attorney

4

has yet to file charges or convene a grand jury.

Lastly, Nygren, Maire and Sylvester argue that to find an official such as a sheriff was discriminatory because he/she did not treat an individual five years ago the same as he did today could lead to "absurd consequences." (Defs.' Br. at 4). If this were allowed, they argue, an official would be afraid to take any action until he/she reviewed every similar action they took in the past. To prove his case, Nygren, Maire, and Sylvester argue that Garrison must show that Nygren treated Garrison differently than similarly situated females in 1998, not five years later in 2003. (*Id.*).

*III. Defendant Patnaude's Response*

Patnaude's response restates many of the same arguments made by Nygren, Maire and Sylvester with one exception. Patnaude argues that contrary to Garrison's argument, she did not waive her privilege against self-incrimination by answering questions proposed by the Illinois State Police. Patnaude further asserts that while Garrison has argued Patnaude "effectively waived" her privilege against self-incrimination, Patnaude can find no authority that suggests that an accused can "effectively waive" her constitutional rights; rather, such rights must be waived knowingly and voluntarily. Additionally, even if Patnaude may have waived her privilege against self-incrimination when answering questions during the investigation, Patnaude argues that Garrison provides no authority that states that once an accused does waive his or her rights, that they cannot assert that privilege at a second round of questions by a civil opponent.

## Discussion

Federal Rules of Civil Procedure 26(b) states, in pertinent part, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, ... . Relevant information need not be admissible at the trial if the discovery appears reasonably

5

calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Rule 37(a)(2)(B) enforces this obligation by providing "... if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted or, ... the discovering party may move for an order ... compelling inspection in accordance with the request ." Fed. R. Civ. P. 37(a)(2)(B).

This Court will first address the issue as to whether Patnaude waived her privilege against self-incrimination when she answered questions posed by the Illinois State Police during a criminal investigation. The Fifth Amendment "protects a person ... against being incriminated by his own compelled testimonial communications." *Fisher v. U.S.*, 425 U.S. 391, 409 (1976). To receive Fifth Amendment protection, a person's statement or act must 1) be compelled; 2) be testimonial; and 3) incriminate the person in a criminal proceeding. The protection enables an individual to refuse to testify at a criminal trial and "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1976). However, an individual may waive their right against self-incrimination if done "voluntarily, knowingly, and intelligently." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). In assessing the validity of a waiver, courts generally analyze the totality of the circumstances surrounding the waiver. *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Patnaude waived her right to self-incrimination by answering questions during a criminal investigation. Can she now invoke her privilege against self-incrimination in this unrelated subsequent civil lawsuit? Like both the parties, this Court had difficulty finding authority on this issue. However, using the voluminous Fifth Amendment/waiver case law authority as a guide, this

Court holds Patnaude would have to answer questions regarding what she said to officers during the investigation. If Patnaude's fear is that answering questions about the investigation may "reopen[] the door to a new round of questions," and the "Sheriff, who is a party to this litigation, may learn of some new incriminating evidence not yet considered by him or the State Police ... [,]" then limiting Patnaude's answers to only that information which she divulged during the investigation should quell such fears. (Def. Patnaude's Resp. at 2). Patnaude does have a right to withhold that information that she did not divulge during the criminal investigation that could, if obtained by the Sheriff or the Illinois State Police, lead to further criminal proceeding against her or stated another way, she has not waived her right in that regard. Therefore, this Court finds that Patnaude's assertion of her Fifth Amendment right against self-incrimination is both valid and invalid as outlined above. Patnaude's Fifth Amendment privilege is not applicable to information already divulged by Patnaude during the criminal investigation against her. There still is the issue of relevancy.

Relevancy is a broad concept in the federal court. That broad concept must be balanced against the invasion of normally privileged information. This Court is hard pressed to find the relevance between Garrison's firing and Patnaude's criminal investigation. To begin with, Garrison and Patnaude's cases seem very different. Whereas Garrison was accused of conspiring with other officers to falsify sick time for retiring officers and went through the trouble of creating two separate work schedules (one schedule posted to show who was working and the other schedule hidden showing when, far in advance, officers were going to call in sick), Patnaude is accused of inflating a request for overtime and although investigated, the State's Attorney found insufficient evidence to criminally prosecute her. Additionally, Garrison was terminated in 1998 and Patnaude was criminally investigated in 2003. A span of five years between the allegedly similarly situated

individuals seems remote. Therefore, this Court denies Garrison's Motion to Compel as not reasonably calculated to lead to relevant material.

## Conclusion

For the above stated reasons, Garrison's Motion to Compel and Modification of Agreed Protective Order is denied.

ENTER:

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 7/23/03